1  Frank L. Bernstein (SBN 189504)
   fbernstein@kenyon.com
2  Michelle N. McLeod (SBN 260844)
   mmcleod@kenyon.com
3  KENYON & KENYON LLP
   1801 Page Mill Road, Suite 210
4  Palo Alto, California 94304-1216
   Tel.:   (650) 384-4700
5  Fax:   (650) 384-4701

6  *Attorneys for Plaintiffs j2 Global, Inc.*
   *(now j2 Cloud Services, Inc.),*
7  *j2 Global Canada, Inc., and*
   *Advanced Messaging Technologies, Inc.*

8

9              **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11

12  j2 GLOBAL, INC.,                    ) Case No. 14-cv-01283-DDP-AJWx
    j2 GLOBAL CANADA, INC., and         )
13  ADVANCED MESSAGING                  ) **MEMORANDUM OF POINTS**
    TECHNOLOGIES, INC.                  ) **AND AUTHORITIES IN**
14                                      ) **SUPPORT OF MOTION TO**
                        Plaintiffs,     ) **STAY LITIGATION PENDING**
15                                      ) **DETERMINATION OF STATE**
                 v.                     ) **COURT AND BANKRUPTCY**
16                                      ) **ACTIONS**
    RPOST HOLDINGS, INC.,               )
17  RPOST COMMUNICATIONS,               ) DATE:     April 27, 2015
    LTD., and RMAIL LTD.                ) TIME:     10:00 AM
18                                      ) PLACE:    Courtroom 3
                        Defendants.     )
19                                      )
                                        )
20  _____)

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

    A.    Factual Background ..................................................................... 2

II.   STATEMENT OF FACTS ....................................................................... 5

    A.    The First of the California Actions – Barton '581 Case – California Superior Court ........................................................................... 5

    B.    The Barton '259 Case – California Superior Court ............................. 6

    C.    The California Bankruptcy Cases, the Barton Adversary Proceedings, and the Shareholder Derivative Actions ............................................... 7

    D.    Numerous Other RPost Patent Infringement Cases Have Been Stayed ........................................................................ 8

III.  THE APPLICABLE LAW REGARDING MOTIONS TO STAY ............. 11

IV.  j2 IS ENTITLED TO A STAY ............................................................. 12

    A.    A Stay Will Not Harm RPost ..................................................... 12

    B.    j2 Would Suffer Harm If RPost Is Found Not To Own the RPost Patents-in-Suit ....................................................................... 13

    C.    A Stay Would Preserve The Orderly Course of Justice ..................... 16

V.   CONCLUSION ................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*CMAX, Inc. v. Hall,*
  300 F.2d 265 (9th Cir. 1962) .................................................................11

*Ethicon, Inc. v. U.S. Surgical Corp.,*
  135 F.3d 1456 (Fed. Cir. 1998) .............................................................15

*Gaia Techs., Inc. v. Reconversion Techs., Inc.,*
  93 F.3d 774 (Fed. Cir. 1996) , *as amended on reh'g on different grounds*, 104
  F.3d 1296 (Fed. Cir. 1996)......................................................................15

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
  545 U.S. 308, 125 S. Ct. 2363 (2005).....................................................18

*Gunn v. Minton.,*
  133 S.Ct. 1059 (2013) ..............................................................................18

*Indep. Wireless Tel.Co. v. Radio Corp. of Am.,*
  269 U.S. 459 (1926) ..................................................................................14

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.,*
  248 F.3d 1333 (Fed. Cir. 2001) ..............................................................14

*Intermedics Infusaid, Inc. v. Regents of the Univ. of Minn.,*
  804 F.2d 129 (Fed. Cir. 1986) ................................................................18

*Landis v. N. Am. Co.,*
  299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ................................11

*Lans v. Digital Equip. Corp.,*
  252 F.3d 1320 (Fed. Cir. 2001)...............................................................15

*Leyva v. Certified Grocers of Calif., Ltd.,*
  593 F.2d 857 (9th Cir. 1979) ..................................................................12

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co., Ltd.,*
  840 F. Supp. 211 (E.D.N.Y. 1994).....................................................17, 18

*Matos v. Sec'y of Dep't of Health & Human Servs.,*
  35 F.3d 1549 (Fed. Cir. 1994) ................................................................15

*Mediterranean Enters., Inc. v. Ssangyong Corp.,*
  708 F.2d 1458 (9th Cir. 1983) ................................................................11

*Ortega v. J.B. Hunt Transport, Inc.,*
  258 F.R.D. 361 (C.D. Cal. 2009)............................................................12

*Paradise Creations, Inc. v. UV Sales, Inc.,*
  315 F.3d 1304 (Fed. Cir. 2003) ..............................................................15

*Schering Corp. v. Roussel-UCLAF SA,*
  104 F.3d 341 (Fed. Cir. 1997) ................................................................15

*Speedplay, Inc. v. Bebop, Inc.,*
  211 F.3d 1245 (Fed. Cir. 2000) ..............................................................13

## I.    INTRODUCTION

Declaratory judgment Defendants RPost Holdings, Inc., RPost Communications Limited, and RMail Limited (collectively, "Defendants" or "RPost") have a history of patent infringement litigiousness.  Some of the numerous lawsuits which Defendants have filed have been resolved.  Many of those lawsuits still are pending.

In the course of some of the pending lawsuits, Defendants' patent infringement targets have uncovered corporate dealings by senior corporate officers, and pending California state court litigation arising from those corporate dealings.  The targets, having learned that those dealings cast a cloud over ownership of the patents that Defendants have been asserting, have moved to stay the lawsuits pending resolution of the state court litigation.

Federal district courts in three different jurisdictions (the Northern District of California; the Eastern District of Texas; and the District of Massachusetts), looking at the same California state court litigation proceedings and outcomes, have issued the requested stays.

Plaintiffs-Counterclaim Defendants j2 Global, Inc. (now j2 Cloud Services, Inc.), j2 Global Canada, Inc., and Advanced Messaging Technologies, Inc. ("AMT") (collectively, "Plaintiffs" or "j2") seek the same relief that these other courts have granted.

Presently, the above-referenced California state court litigation, scheduled for trial in November 2015, is expected to resolve ownership of the patents that Defendants are asserting in this case.  j2 seeks a stay of all deadlines in this case pending the outcome of that California state court litigation.  Accordingly, j2 provides the following Memorandum of Points and Authorities to support j2's Motion to Stay.

### A.    Factual Background

In response to patent infringement threats which j2 received from Defendants, j2 filed the instant action, seeking declarations of non-infringement and invalidity of nine US patents which Defendants are accusing j2 of infringing:  U.S. Patent Nos. 8,209,389 ("the '389 patent"); 8,161,104 ("the '104 patent");  8,468,198 ("the '198 patent"); 8,468,199 ("the '199 patent"); 8,224,913 ("the '913 patent"); and 7,966,372 ("the '372 patent"); 8,275,845 ("the '845 patent");  6,182,219 ("the '219 patent"); and 8,484,706 ("the '706 patent")  (collectively, "the RPost Patents-in-Suit").  Dkt. No. 18.  AMT also alleges that RPost infringes two patents.  *Id.*  RPost has answered, and has asserted counterclaims alleging that j2 infringes the RPost Patents-in-Suit.  Dkt. No. 20.

This Court issued a Scheduling Order in October 2014.  Dkt. No. 34. The parties presently are engaged in discovery, and have completed briefing on claim construction issues, preparatory to a claim construction hearing, presently scheduled for May 1, 2015.

Before filing this lawsuit, and on at least two occasions after filing the lawsuit, j2 has offered a mutual dismissal of the parties' patent infringement claims against each other.  Declaration of Frank L. Bernstein (Bernstein Decl.), ¶ 3.  To date, RPost has not bothered to respond to j2's offer.  *Id.*  As a result, this litigation is proceeding.

However, if RPost does not own the RPost Patents-in-Suit, RPost has no standing to sue.  That is why j2 is filing this motion.  j2 did not provoke this dispute, and has no interest in having it proceed unnecessarily, wasting the Court's resources as well as j2's.

In the course of its factual investigation of other patent infringement litigation involving the RPost Patents-in-Suit, some of that investigation preceding the filing of this action, but most of it following the filing of this

1  action, j2 became aware of pending California state court litigation regarding
2  corporate dealings of RPost and its senior executives, and of motions to stay
3  which other accused infringers have filed in patent litigation with RPost.  As a
4  result of the investigation, j2 determined that it should ask this Court to stay this
5  litigation because, if RPost does not own the patents it is asserting against j2,
6  there is no legal basis for RPost's seeking relief in this Court.

7      In the Superior Court of California , there is litigation currently pending
8  against Defendants, relating to the ownership of the RPost Patents-in-Suit
9  (among other claims).  *Kenneth Barton v. RPost International Ltd., RMail Ltd.,*
10  *and RPost Communications Ltd.*, Case No. YC065259 (the "Barton '259 Case").
11  The Barton '259 Case is set for trial on November 3, 2015.   Declaration of
12  Michelle McLeod (McLeod Decl.), Ex. 22.

13      RPost's patent infringement litigation in the Northern District of
14  California has been stayed pending resolution of the Barton '259 case, either on
15  motion or *sua sponte* by the Court.  On July 22, 2014, the Court ordered a stay
16  in *Trend Micro Inc. v. RPost Holdings, Inc.* (3:13-cv-05227).  McLeod Decl.,
17  Ex. 1.  On July 25, 2014, the Court ordered stays in three other cases on the
18  same basis:  *RPost Holdings, Inc. v. Trend Micro Inc.* (3:14-cv-02824); *MIS*
19  *Sciences Corp. v. RPost Communications Ltd* (3:14-cv-00376), , and *Symantec*
20  *Corp. v. RPost Holdings, Inc.* (3:14-cv-00238).  McLeod Decl., Exs. 2-4.

21      The same is true of all of the pending RPost cases in the Eastern District
22  of Texas in which the issue of a stay has arisen.  McLeod Decl., Exs. 5-13.

23      In the District of Massachusetts, the Court stayed *Yesware, Inc. v. RPost*
24  *Holdings, Inc.* (1:13-cv-12837) and *RPost Holdings, Inc. v. Yesware, Inc.* (1:13-
25  cv-13761) in light of the state and bankruptcy proceedings.  McLeod Decl.,
26  Exs. 13, 14.

27      The Barton '259 Action and other state court and bankruptcy litigation
28  involving one or more of the Defendants (collectively, "the California Actions" –

KENYON & KENYON LLP
PALO ALTO

MEMO IN SUPPORT OF MOTION TO STAY

*see* McLeod Decl. Exs. 16-20, 22-31) raise the same issues in the present case as in the cases which other courts already have stayed:

> (1) the rulings and allegations in the California Actions bring into question whether Defendants have sufficient rights in the RPost Patents-in-Suit to pursue an action for patent infringement; patent ownership (standing) is a case-dispositive prerequisite to proceeding with a patent infringement claim (or, as in this case, a patent infringement counterclaim);
>
> (2) the patent ownership issues raised by the California Actions are fundamentally a matter of state law and should be determined <u>before</u> litigating whether the RPost Patents-in-Suit are valid and/or infringed;
>
> (3) if a different entity is adjudicated to own the RPost Patents-in-Suit, it may choose to take the case in a totally different direction; and
>
> (4) settlement is not an option so long as there is a cloud over Defendants' authority to enforce the RPost Patents-in-Suit and so long as there is a threat of suit by third parties laying claim to the RPost Patents-in-Suit.

If unresolved before an adjudication of the patent infringement issues pending in the present case, the parties and the Court will have to expend resources, without possibility of settlement (given RPost's refusal to engage with, or even respond to j2), ultimately to have Defendants' counterclaims dismissed if Defendants lack standing.

A stay in this action would ensure judicial economy, eliminate the possibility that Defendants may benefit from fraudulently transferred assets, eliminate the risk that Plaintiffs might be required to litigate the RPost Patents-in-Suit multiple times, and ensures that settlement with the true owners of the RPost Patents-in-Suit can be a meaningful alternative to litigation.

## II.   STATEMENT OF FACTS

### A. The First of the California Actions – Barton '581 Case – California Superior Court

On January 29, 2010, Kenneth Barton, a substantial shareholder and founder of RPost International Ltd. ("RPI") – which is not a defendant in the present litigation – sued, among other defendants, RPI, RPost, Inc., Zafar Khan (RPost founder and principal), and Terrence Tomkow (RPost founder, officer, and sole inventor on each patent-in-suit), in state court, alleging, among other things, fraud and breach of fiduciary duty.   McLeod Decl., Ex. 16, p. 1.  In *Barton v. RPost International Ltd.*, Superior Court of the State of California, Los Angeles County, Case No. YC061581 ("Barton '581 Case"), Mr. Barton alleged that Defendants fraudulently undid a transaction in which Mr. Barton had acquired approximately six million shares in RPI, and returned those shares to RPI's treasury.  *Id.*   Following a bench trial in August 2012, the California Superior Court found that Mr. Khan and Dr. Tomkow had committed acts "with malice, oppression and fraud," and ordered Mr. Khan and Dr. Tomkow not only to restore the shares to Mr. Barton, but also to pay him punitive and general damages, as well as damages for emotional distress.  *Id.* at 1, 9-10.

In June 2013, the California Superior Court issued a further ruling, revising its earlier Statement of Decision, and awarding over $4 million to Mr. Barton in total compensation for his converted shares (in lieu of the shares being returned), damages for emotional distress, and punitive damages against Mr. Khan and Dr. Tomkow ($250,000 and $150,000, respectively).   McLeod Decl., Ex. 17 at 1, 3-5.  In awarding punitive damages, the Court concluded that "Mr. Khan's course of conduct in this case rises to a significant degree of reprehensibility. " *Id.* at 4.

In response, RPost International Limited, Mr. Khan and Dr. Tomkow appealed the ruling in Case No. B251722.  On December 9, 2014, the Court of Appeal modified the judgment by deducting emotional distress damages and (as

1   modified) affirmed the judgment of the Superior Court.  McLeod Decl., Ex. 18,

2   p. 3.  Subsequently, RPI, Mr. Khan and Dr. Tomkow filed a petition for review

3   to the California Supreme Court in Case No. S223808.  McLeod Decl., Ex. 19,

4   p. 2.  On March 11, 2015, the petition was denied.  *Id.*

5       **B. The Barton '259 Case – California Superior Court**

6       On July 28, 2011, Mr. Barton brought another state court action against

7   defendants RPI, RMail Limited ("RMail"), and RPost Communications, Inc.

8   ("RComm") alleging that RPI, Mr. Khan, and Dr. Tomkow fraudulently

9   transferred assets – including intellectual property – to RMail and RComm.

10  McLeod Decl., Ex. 20.  In *Barton v. RPost International Ltd.*, Superior Court of

11  the State of California, Los Angeles County, Case No. YC065259 ("Barton '259

12  Case"), Mr. Barton alleges that Mr. Khan and Dr. Tomkow (the largest common

13  shareholders and officers of RMail, RComm, and RPI) fraudulently transferred

14  assets to RMail and RComm, including ownership of "at least seven (7) patents

15  in the United States . . . inherent to its business products and services."  *Id.* ¶ 8.

16  Those fraudulently transferred intellectual property assets include rights that

17  RPI holds, specifically including, among other patents, the remaining RPost

18  Patent-in-Suit (the '219 Patent)  certain patents that RPI has asserted in

19  numerous actions against various defendants. Id. ¶ 9. Barton seeks to void the

20  transfer of these assets, general damages, an injunction, and the appointment of

21  a receiver to take charge of the transferred assets.

22      In the '259 Case, Mr. Barton also alleges that Mr. Khan and Dr. Tomkow,

23  who control both RPI and RMail, caused RPI to transfer $750,000 to RMail,

24  which RMail then used to "purchase" the '219 Patent and other intellectual

25  property assets.  *Id.*   Mr. Khan and Dr. Tomkow then had RPI pay a license fee

26  to RMail for the use of the very same intellectual property assets it held before

27  the fraudulent transfer.  *Id.*   Mr. Barton also alleges that Mr. Khan, Dr.

28  Tomkow, and RPI fraudulently transferred other RPI assets to RComm without

the approval of or notice to RPI's shareholders, including Mr. Barton.  *Id.* ¶¶ 10, 12.   Mr. Barton's averments are significant because the USPTO assignment records for the Defendants' RPost Patents-in-Suit in this case indicate that RPI assigned all of the patents except for the '219 Patent to RComm in a common document executed on March 21, 2011, and recorded on June 5, 2013 at Reel/Frame 030549/0838.  McLeod Decl., Ex. 21.[1]   The assignment is signed only by Mr. Khan as an "Officer" of RPI and by Dr. Tomkow as an "Officer" of RComm.  *Id.*  RMail and RComm have since attempted to exploit the value of those allegedly fraudulently transferred assets against numerous parties, including j2.  Many of these attempted exploitations resulted in litigation, whether RPost filed complaints, or whether accused infringers, concerned about RPost's assertions, as j2 is here, filed declaratory judgment actions.

The '259 Case is ongoing.  McLeod Decl., Ex. 22.  On March 13, 2015, the court held a trial setting conference.  A further trial setting conference is scheduled for April 14, 2015.  Trial is scheduled for November 3, 2015.

## C. The California Bankruptcy Cases, the Barton Adversary Proceedings, and the Shareholder Derivative Actions

Allegedly seeking to avoid paying a judgment to Mr. Barton, Mr. Khan and Dr. Tomkow each filed for bankruptcy protection under Chapter 13. McLeod Decl. Ex. 23.  Both the bankruptcy trustee and Mr. Barton objected to these filings on numerous grounds.   McLeod Decl., Exs. 24 and 25.  Mr. Barton filed motions to convert Mr. Khan's and Dr. Tomkow's bankruptcy petitions to Chapter 7.  *See*, *e.g.*, McLeod Ex. 26.  The court subsequently granted the motions, and Mr. Khan and Mr. Tomkow appealed.  *See, e.g.*, McLeod Decl., Exs. 27 and 28.  Mr. Khan and Mr. Tomkow have since filed appeals to the

---

[1]   The '706 Patent had not yet issued at the time of the assignment, but the application that became the '706 Patent (Application No. 12/767,755) is listed on the assignment.  *Id.*, p. 4.

1    Ninth Circuit Court of Appeals after the Bankruptcy Appellate Panel affirmed.

2    *See*, *e.g.*, McLeod Decl., Ex. 29.

3         Mr. Barton also filed separate adversary proceedings in the Khan and

4    Tomkow Bankruptcy Cases reporting the rulings in the Barton '581 Case and

5    reiterating the allegations in the Barton '259 Case.   McLeod Decl., Ex. 30

6    (Complaints in Khan and Tomkow Barton Adversary Proceedings).   These

7    proceedings are now stayed, and the next status hearing is set for March 31,

8    2015.

9         By filing for bankruptcy, not only did Mr. Khan and Dr. Tomkow place

10   their assets—including control of RMail, RComm, and therefore the RPost

11   Patents-in-Suit—at issue in satisfying the over $4 million judgment of their

12   creditor Mr. Barton, they also triggered the Shareholder Derivative Actions filed

13   as adversary proceedings in the Khan and Tomkow Bankruptcy Cases.  McLeod

14   Decl., Ex. 31.  Similarly to the Barton '259 Case, the Shareholder Derivative

15   Actions allege fraudulent transfer of intellectual property assets out of RPI, and

16   allege that Mr. Khan and Dr. Tomkow misappropriated funds from RComm and

17   violated their fiduciary duties to RComm shareholders.  *Id*., ¶¶ 34-38, 44-48.

18   The plaintiffs in the Shareholder Derivative Actions seek, among other

19   remedies, (i) that a receiver or trustee be appointed to manage and operate

20   RComm to ensure that assets of RComm, including proceeds from RComm's

21   patent lawsuits, are secured, and (ii) that the court order that all proceeds from

22   RComm's patent lawsuits be held in trust, interplead to the Court, and/or paid to

23   and held by a receiver or trustee pending further order of that Court.  *Id*., ¶ 52.

24   These actions are currently in the discovery phase, and the discovery cut-off is

25   July 31, 2015.

26        **D. Numerous Other RPost Patent Infringement Cases Have Been**
          **Stayed**

27

28        RPost has been filing patent infringement lawsuits years, and presently

     has pending a number of cases (some as a patent infringement plaintiff, some

1   as a declaratory judgment patent infringement counterclaimant) dating back to

2   2010.  *See generally* McLeod Decl., Exs. 1-14.  These cases are pending in the

3   Northern District of California, the Eastern District of Texas, and the District of

4   Massachusetts.  *Id.*  As discussed below, almost all of RPost's cases have been

5   stayed as a result of the above-discussed litigation in California Superior Court

6   and Federal Bankruptcy Courts that challenge whether Defendants even own the

7   patents.

8          In the now-stayed Eastern District of Texas patent infringement lawsuits,

9   by order dated August 1, 2013, District Court Judge Rodney Gilstrap – who is

10  presiding over numerous RPost cases – issued a *sua sponte* order staying for

11  ninety (90) days three cases in which RPost asserted its patents.  McLeod Decl.,

12  Ex. 6.  Citing correspondence from counsel in the Barton cases to defendants in

13  certain RPost cases pending in Texas, Judge Gilstrap noted that "the current

14  corporate representative for [RPost] in the above cases has been adjudged to

15  have committed fraud.   Such matters may have significant and substantive

16  effects on [RPost's] posture in these cases."   *Id.* at 2.  The correspondence from

17  counsel for Mr. Barton demanded that "before [Adobe] enters into any

18  settlement or disposition concerning the lawsuit concerning RPost, RMail and

19  Adobe, [Adobe] notify all interested parties, and obtain court approval (after

20  providing reasonable notice) from the United States District Court and/or the

21  Bankruptcy Court where Khan and Tomkow filed.  We hope this notice will

22  avoid potential litigation between [the Shareholder Derivative Action plaintiffs]

23  and [Adobe]."  McLeod Decl., Ex. 32.  Counsel in the Barton cases stated:

24         Without prejudice to any of Mr. Barton's rights and remedies, in our
         opinion, no settlement of any IP actions – including the action pending
25         against [Adobe] – should be negotiated or executed without full
         disclosure of these circumstances to, among other courts, the United
26         States Bankruptcy Court and the United States Bankruptcy Trustees
         appointed to the Khan/Tomkow bankruptcies in the Central District in
27         Los Angeles, prior and reasonable written notice to our office and

28

other interested parties of the proposed terms, and other due process measures (including written notice to counsel for various RPost shareholders who have since filed derivative actions including fraudulent conveyance claims).

*Id.* at 3.   Judge Gilstrap found that RPost's shareholders' claim to ownership of the patents and statements that impeded settlement discussions went directly to patent ownership (and corporate authority) such that the cases should be stayed.

On January 30, 2014, Judge Gilstrap stayed and administratively closed RPost cases against Adobe, DocuSign and RightSignature, as well as cases against Vocus, Experian, Epsilon, Constant Contact and Infogroup until after the Barton 259 Case is tried.   McLeod Decl., Exs. 7-10.[2]   Judge Gilstrap stated that "[i]f the fraudulent transfer claims are ultimately resolved in Barton's favor and the March 2011 transaction declared null and void, then that result would have a considerable impact" on RPost's ability to assert patent claims against other companies.   McLeod Decl., Ex. 7 at 11.   Judge Gilstrap also noted that "permitting the Texas cases to proceed creates a risk of undue prejudice to the Defendants by subjecting them to multiple suits should [RPost] not be found to be the rightful patent owners."   *Id.* at 12.

Judge Gilstrap subsequently stayed additional pending RPost patent infringement litigation.   McLeod Decl., Exs. 11, 12.

In the now-stayed Northern District of California patent infringement cases, District Court Judge Chhabria expressed similar concerns.   McLeod Decl., Exs. 1-4, especially Ex. 1.   Recognizing that several of RPost's cases in the Eastern District of Texas had been stayed, Judge Chhabria noted that if RPost Holdings, Inc. is "found not to own the patents at issue, they will lack standing to pursue their counterclaims . . . .   It would be a waste of the parties'

---

[2]   McLeod Exs. 7-10 appear identical because identical orders were filed in each of the referenced actions.

1   and the Court's resources to proceed with this case, only to later learn that it

2   involves the wrong defendants."  McLeod Decl., Ex. 1, p. 1.  Subsequently, on

3   July 24, 2014, Judge Chhabria stayed three related cases for the same reasons.

4   McLeod Decl., Exs. 2-4.

5        Similarly, in the District of Massachusetts, District Court Judge Richard

6   Stearns stayed two related cases.  McLeod Decl., Exs. 13, 14.  Acknowledging

7   Judge Gilstrap's concerns, Judge Stearns stated, "[T]his court recognizes that

8   there may be significant prejudice to the alleged infringers in expending

9   substantial resources defending against infringement allegations when the

10  patentee's standing is in serious doubt."  *Id.*[3]

11  **III.   THE APPLICABLE LAW REGARDING MOTIONS TO STAY**

12       This Court has the power to stay these proceedings.  This power "is

13  incidental to the power inherent in every court to control disposition of the

14  causes on its docket with economy of time and effort for itself, for counsel, and

15  for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed.

16  153 (1936).   The Court has the discretion to institute a stay.  *CMAX, Inc. v.*

17  *Hall*, 300 F.2d 265, 268 (9th Cir. 1962).   Where, as with the California

18  Actions here, there are concurrent, independent proceedings related to a

19  matter (such as allegations of patent infringement) before the court, the court

20  may, in the interests of judicial efficiency, stay an action before it pending

21  resolution of the separate proceedings.  *See Mediterranean Enters., Inc. v.*

22  *Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (A court may "find it is

23  efficient for its own docket and the fairest course for the parties to enter a stay

24  of an action before it, pending resolution of independent proceedings which

25

26  [3]   In another District Court of Massachusetts case, *Sophos, Inc. v. RPost Holdings, Inc.* (1:13-cv-12856-DJC), Judge Cushing denied Sophos' request for a stay.  McLeod Decl., Ex. 15.  However, unlike the orders in the other stayed cases, Judge Cushing's order did not provide any reasoning for its decision.  Earlier in the same case, the Court denied RPost Holdings' motion to transfer, over Sophos' objection.

27

28

1  bear upon the case").  This Court's power to stay this proceeding extends to

2  stays pending resolution of separate judicial proceedings, and does not require

3  the issues in such proceedings to be determinative of the action before the court

4  (here, allegations of patent infringement).  *Leyva v. Certified Grocers of Calif.,*

5  *Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).  Accordingly, it is within this

6  Court's discretion to determine whether a stay is warranted in this case.

7       The competing interests that a district court must weigh in deciding

8  whether to grant a stay include: "(1) possible damage which may result from

9  the granting of a stay, (2) the hardship or inequity which a party may suffer in

10  being required to go forward, and (3) the orderly course of justice measured in

11  terms of the simplifying or complicating of issues, proof, and questions of law

12  which could be expected to result from a stay.*"* *Ortega v. J.B. Hunt Transport,*

13  *Inc.*, 258 F.R.D. 361, 371 (C.D. Cal. 2009) *(citing CMAX, supra)*.  A stay may

14  be the most efficient and fairest course where, as here, there are "independent

15  proceedings which bear upon the case."  *Leyva*, 593 F.2d at 863.

16  **IV.   j2 IS ENTITLED TO A STAY**

17       j2 recognizes that a declaratory judgment plaintiff is not usually the party

18  who files a motion to stay.  However, as can be appreciated from the factual

19  background which j2 has presented, this case presents unique facts and

20  circumstances, including state court litigation regarding ownership of the

21  underlying RPost Patents-in-Suit, state court litigation regarding adjudicated

22  asset conversion, resulting bankruptcy proceedings.  As courts in three other

23  jurisdictions have found, on the same facts, j2 believes that these facts and

24  circumstances warrant a stay.

25       **A. A Stay Will Not Harm RPost**

26       If the stay is granted, little to no damage will result to RPost.   First,

27  RPost brought patent infringement counterclaims.  Assuming patent ownership

28  is resolved in RPost's favor, a stay will not impact the remedy RPost seeks.

1    Second, the Barton '259 Case is scheduled to begin trial on November 3, 2015,

2    less than 8 months from the date of this motion.   McLeod Decl., Ex. 22 at 3.

3    Mr. Barton has already obtained a judgment in the Barton '581 Case, and that

4    judgment was affirmed on appeal.  The California Bankruptcy Actions and the

5    Shareholder Derivative Actions are likewise in various positions of appeal or

6    stay.  Given the number of patent infringement cases RPost has pending, and

7    given that so many of those cases have been stayed, any potential alleged

8    losses that RPost may incur during a stay in this case could simply be added to

9    RPost's counter claim for damages.

10          Furthermore, should the California Actions result in an adjudication that

11   RPost lacks any ownership interest in the RPost Patents-in-Suit, a stay of this

12   action will not result in <u>any</u> harm to RPost.   Lack of ownership in the RPost

13   Patents-in-Suit will mean that RPost lacked standing to assert counterclaims,

14   and the counterclaims will be summarily dismissed.   In fact, in that

15   circumstance, a stay would accrue to <u>RPost's</u> benefit in preserving resources that

16   otherwise would be invested in litigating this matter in the interim.   Moreover,

17   RPost will likely benefit from the clarity provided by resolution of the issue of

18   who owns the RPost Patents-in-Suit.   Because the stay will not damage RPost,

19   the Court should grant Plaintiff's motion.

20   **B. j2 Would Suffer Harm If RPost Is Found Not To Own the RPost**
     **Patents-in-Suit**

21

22         On the other hand, j2 would suffer harm if RPost is allowed to pursue

23   patent infringement counterclaims when there clearly is a legitimate legal

24   question as to whether RPost has standing to assert counterclaims.   A party

25   must own a patent in order to have standing to pursue a patent infringement

26   action. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1249-50 (Fed. Cir.

27   2000).   To allow the present case to proceed in view of the present and

28   mounting doubt that the proper owner of the RPost Patents-in-Suit is a party

     to the instant action would substantially prejudice j2, and potentially would

1    subject j2 to multiple suits regarding the RPost Patents-in-Suit.  j2 would be

2    expending resources in this litigation, only to have to repeat the exercise in

3    subsequent litigation.  "The presence of the owner of the patent as a party is

4    indispensable, not only to give jurisdiction under patent laws, but also in most

5    cases to enable the alleged infringer to respond in one action to all claims of

6    infringement for his act, and thus either to defeat all claims in the one action, or

7    by satisfying one adverse decree to bar all subsequent actions."  *Intellectual*

8    *Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1347 (Fed.

9    Cir. 2001) (*citing Indep. Wireless Tel.Co. v. Radio Corp. of Am.*, 269 U.S. 459,

10   468 (1926)).

11        The Eastern District of Texas Court recognized this prejudice in its stay

12   orders, acknowledging the California Actions "may have significant and

13   substantive effects on the [Defendants'] posture in these cases" and that:

14        the consequences and foreseeable ramifications of these identified
15        litigations in California create a material risk that the time and
         resources of both the parties and this Court could be wasted if such
16        continue to move forward as currently scheduled.

17   McLeod Decl., Exs. 7-10 at 2.  See also McLeod Decl., Exs. 12, 13.  If the

18   California Actions were to result in a finding that someone other than RPost owns

19   the RPost Patents-in-Suit, j2 could be subject to multiple suits.  Moreover, the

20   unresolved nature of RPost's standing jeopardizes potential resolutions of this

21   matter.  In the Shareholder Derivative Actions and Barton Adversary Proceedings,

22   the plaintiffs seek a Court order that proceeds from Defendants' lawsuits, such as

23   this one, be held in trust, interplead to the Bankruptcy Court, or paid to a trustee or

24   receiver.  McLeod Decl., Ex. 31, ¶ 52.  The plaintiffs in those cases have also

25   warned other RPost defendants about potential problems that would arise from any

26   settlements with RPost.  McLeod Decl., Ex. 32.

27        Furthermore, Mr. Barton seeks to attach or levy execution on the

28   intellectual property assets transferred to RMail or RComm.    McLeod Decl.,

1  Ex. 20, p. 10.  If Mr. Barton or RPI is awarded any ownership interest in the

2  patents at issue, then RPost will lack standing because neither Mr. Barton nor

3  RPI – whoever the correct owner(s) may be – is a party to this action.

4        In *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467-68 (Fed. Cir.

5  1998), the Federal Circuit stated:

6        An action for infringement must join as plaintiffs all co-owners . . . .

7        Further, as a matter of substantive patent law, all co-owners must
      ordinarily consent to join as plaintiffs in an infringement suit.

8        Consequently, "one co-owner has the right to impede the other co-

9        owner's ability to sue infringers by refusing to voluntarily join in such
      a suit."

10

11  *Id.* (*quoting Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir.

12  1997)).  Moreover, RPost cannot cure a lack of standing simply by adding RPI or

13  Mr. Barton to the lawsuit at a later time.   In *Paradise Creations, Inc. v. UV Sales,
Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003), the Federal Circuit held that in order for

14  a party to have standing, the party asserting infringement must demonstrate that it

15  held enforceable title to the patent at the inception of the lawsuit:

16

17        Accordingly, this court has determined that in order to assert standing
      for patent infringement, the plaintiff must demonstrate that it held

18        enforceable title to the patent *at the inception of the lawsuit*.

19  *Id.* (emphasis in original) (citing *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328

20  (Fed. Cir. 2001) (holding that the appellant did not have standing because he had

21  already assigned title to the patent at the inception of the lawsuit); *Gaia Techs., Inc.*

22  *v. Reconversion Techs., Inc.*, 93 F.3d 774, 778, 781 (Fed. Cir. 1996) (holding that

23  the plaintiff's patent and trademark infringement claims were required to be

24  dismissed for lack of standing because of its "inability to prove that it was the

25  owner of the Intellectual Property at the time the suit was filed"), *as amended on*

26  *reh'g on different grounds*, 104 F.3d 1296 (Fed. Cir. 1996); *cf. Matos v. Sec'y of*

27  *Dep't of Health & Human Servs.*, 35 F.3d 1549, 1553 (Fed. Cir. 1994)).

28

1  So, in the present case the California Actions cast doubt on RPost's legal

2  standing.  In addition, the plaintiffs in the Shareholder Derivative Actions and

3  Barton cases have put others whom RPost has accused of infringement on notice

4  of a possible challenge or claim to any settlement with or judgment for RPost.

5  *See* McLeod Decl., Ex. K.  Accordingly, j2 cannot settle this case without the

6  risk of being sued or involuntarily drawn into the California Actions by the

7  plaintiffs in those actions.

8  Consequently, this Court should stay this litigation until ownership of the

9  RPost Patents-in-Suit has been decided.[4]

10  **C. A Stay Would Preserve The Orderly Course of Justice**

11  A ruling in favor of Mr. Barton or the other RPost shareholders that the

12  RPost Patents-in-Suit were fraudulently transferred would mean that RPost

13  would lack standing to assert patent infringement counterclaims, and would

14  dispose of the issues regarding the RPost Patents-In-Suit.   Given Mr. Barton's

15  prior success in the Barton '581 Case (in which the Court found that RPI, Mr.

16  Khan, and Dr. Tomkow had engaged in fraud in converting Mr. Barton's

17  shares), there is a reasonable likelihood the Court will find that those parties

18  also fraudulently transferred the RPost Patents-in-Suit.   Judicial resources

19  would be wasted if the parties were required to move forward with this

20  litigation, only to later find that RPost lacked proper standing to assert the

21  RPost Patents-In-Suit.   This Court (or even worse, another court) would then

22  be required to start anew with the legitimate owners of the patents.   All

23  investment of time and resources by the Court and by the parties would have

24  been for naught.   A stay of the instant action (consistent with the stay already

25

26  [4]   j2 has offered mutual dismissal of all claims by either party in this case.
While RPost has not replied to this offer, despite j2's extending it on
27  multiple occasions, that solution could also resolve the situation pending
resolution of the RPost Patents-in-Suit ownership issue which is central to
28  this litigation.

1    imposed in numerous other RPost litigations) would simplify all of these issues

2    and would facilitate a path to resolution for all parties involved.

3            Moreover, in the event that Defendants are found to be the legitimate

4    owners of the patents, a stay still preserves the orderly course of justice.

5    Given the short timeframe between the submission of this motion and trial in

6    the Barton '259 Case (less than eight months), a delay will not prejudice any

7    of the parties.  The instant action is still in the early stages.  This Court has not

8    yet invested substantial time in adjudicating this matter.

9            Federal courts have granted motions to stay in patent infringement

10   actions in view of a concurrent state court case which would determine

11   ownership of the patents involved in the infringement action.    In *Loral*

12   *Fairchild Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 840 F. Supp. 211, 213,

13   219 (E.D.N.Y. 1994), the court granted a motion to stay a patent infringement

14   action pending the outcome of a California state action over ownership of the

15   patent at issue.  In *Loral*, after filing the California state action, the plaintiff

16   amended its complaint to add claims regarding patent ownership against the

17   two entities opposing it in the California state action.  *Id.* at 212-13, 215.

18           In its ruling, the Loral court referred to the factors regarding abstention in

19   the exercise of federal jurisdiction.  With respect to the factor involving the

20   "rule of decision," the court acknowledged that "the infringement claims are

21   governed by federal law but ownership of these patents will be settled by state

22   contract law."  *Id.* at 217.   The court also focused on the avoidance of

23   piecemeal litigation:

24           This litigation has taken up considerable time and resources of this
         court; abstention is not granted easily.  Yet, in the interest of justice,
25       there can be no other course but to stay this action pending the
         resolution of the California state action which we hope will be
26       obtained quickly.  The proof and questions of law of the infringement
         and ownership issues differ greatly; ownership of these patents is
27

28

governed by state contract law whereas infringement is governed by federal law[.]

*Id.* at 218.    And *Loral* is not the only case in which a federal court has stayed patent litigation pending state court action regarding patent ownership.   *See, e.g.*, *Intermedics Infusaid, Inc. v. Regents of the Univ. of Minn.*, 804 F.2d 129, 130, 135 (Fed. Cir. 1986) (affirming district court's grant of stay of patent declaratory judgment action pending Minnesota state court decision that could moot the patent suit).

*Gunn v. Minton*, 133 S.Ct. 1059 (2013), also supports staying a federal court action where "there is no 'serious federal interest in claiming the advantages thought to be inherent in a federal forum'" for a primary issue in the case.  *Id.* at 1068 (*quoting Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313, 125 S. Ct. 2363 (2005)) (holding that the state court had jurisdiction over a malpractice suit on an underlying patent case).   Here, the ownership issue does not involve a "serious federal interest," and the state court actions should decide that issue.  *Gunn*, 133 S.Ct. at 1068.  For this reason as well, this action should be stayed pending resolution of the California Actions.

(Rest of page deliberately left blank)

## V.     CONCLUSION

For the foregoing reasons, j2 respectfully requests that this case be stayed while the issue of patent ownership (which goes to the heart of standing) is litigated in the California Actions.

Dated:  March 23, 2015                    Respectfully submitted,

Frank L. Bernstein (SBN 189504)
fbernstein@kenyon.com
Michelle N. McLeod (SBN 260844)
mmcleod@kenyon.com
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
(650) 384-4700
(650) 384-4701 facsimile

*Attorneys for Plaintiffs j2 Global, Inc.
(now j2 Cloud Services, Inc.),
j2 Global Canada, Inc., and
Advanced Messaging Technologies, Inc.*